IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: RONALD HYMAN, | : | BANKRUPTCY NO. 08-12791 |
| Debtor. | : | ADVERSARY NO. 11-852 |

| | | |
|---|---|---|
| RONALD HYMAN, | : | CIVIL ACTION |
| Plaintiff/Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| THE ABSTRACT CO., INC., et al., | : | NO. 13-4178 |
| Defendants/Appellees. | : | |

| | | |
|---|---|---|
| THE ABSTRACT CO., INC., et al., | : | CIVIL ACTION |
| Defendants/Cross-Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD HYMAN, | : | NO. 13-4309 |
| Plaintiff/Cross-Appellee. | : | |

MEMORANDUM ORDER

AND NOW, this 16th day of January 2014, upon consideration of Appellant Ronald Hyman's Brief (Case No.13-4178, Doc. No. 4), Appellees The Abstract Company, Inc. and Edwin P. Smith, Esquire's Brief (Case No.13-4178, Doc. No. 5), and Appellant's Supplement to Brief of Ronald Hyman (Case No.13-4178, Doc. No. 8); and upon consideration of Cross-Appellants The Abstract Company, Inc. and Edwin P. Smith, Esquire's Opening Brief (Case No. 13-4309, Doc. No. 4), Cross-Appellee Ronald Hyman's Brief in Opposition (Case No. 13-4309, Doc. No. 6), Cross-Appellants' Reply Brief (Case No. 13-4309, Doc. No. 7), and Cross-Appellants' Supplemental Brief (Case No. 13-4309, Doc. No. 9), it is hereby ORDERED that this matter is REMANDED to the United States Bankruptcy Court for the Eastern District of Pennsylvania for further proceedings consistent with this opinion.  The Clerk of Court shall mark Case Numbers 13-4178 and 13-4309 closed for statistical purposes.

## I.  FACTUAL BACKGROUND

In February 2008, Ronald Hyman initiated a lawsuit (the "Underlying Lawsuit") against

The Abstract Company, Inc. ("Abstract") by filing a writ of summons[1] with the Court of

Common Pleas of Philadelphia County.  (Mot. Summ. J. Hr'g Tr. 7:19–21, Sept. 26, 2012, R.

Vol. II Ex. 18;[2] see generally Pa. R. Civ. P. 1007.)  Hyman did not file a complaint or take any

further action in the Underlying Lawsuit until more than a year later.  (Mot. Summ. J. Hr'g Tr.

8:1–2.)

Meanwhile, on April 20, 2008, Hyman filed a bankruptcy petition under Chapter 7 of the

Bankruptcy Code.  (Id. at 7:21–22.)  Abstract received notice of this filing on May 21, 2008,

when Hyman filed a suggestion of bankruptcy in the Underlying Lawsuit.  (Id. at 7:22–24.)  On

December 2, 2008, the United States Bankruptcy Court for the Eastern District of Pennsylvania

"granted [Hyman] a discharge under section 727 of title 11, United States Code."  (Discharge of

Debtor 1, Dec. 2, 2008, Bankr. Case No. 08-12791, Doc. No. 40.)  As discussed in Part III, infra,

a discharge under section 727 eliminates the debtor's obligation to pay most liabilities on claims

that existed when the debtor filed for bankruptcy.  The Bankruptcy Court's discharge order (the

"Discharge Order") included form language explaining that a "discharge prohibits any attempt to

---

[1] "A writ of summons is an official court document in a form prescribed by law which informs a defendant that named plaintiffs have commenced an action against him in a specified court."  Cope v. Ins. Comm'r of Com., 955 A.2d 1043, 1056 (Pa. Commw. Ct. 2008).  "The model form for a general writ of summons under Pennsylvania law merely contains the plaintiff's name, the defendant's name, and notice that an action has been commenced, with the county, the date, the name of the prothonotary or clerk, and the deputy."  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 223 (3d Cir. 2005); see also Pa. R. Civ. P. 1351.

[2] Unless otherwise noted, all citations to the record refer to the record on appeal in Case Number 13-4178.

collect from the debtor a debt that has been discharged."  (<u>Id.</u> at 2.)  On December 5, 2008, the Bankruptcy Court closed Hyman's bankruptcy case.  (Mot. Summ. J. Hr'g Tr. 7:25–8:1.)

Shortly after the bankruptcy proceedings were closed, Abstract filed a praecipe and rule upon Hyman to file a complaint in the Underlying Lawsuit or suffer a judgment of non pros.  (<u>Id.</u> at. 8:1–2; <u>see generally</u> Pa. R. Civ. P. 1659.)  On January 22, 2009, Hyman filed a complaint in the Underlying Lawsuit alleging that Abstract had engaged in real estate fraud.  (Mot. Summ. J. Hr'g Tr. 8:2; Bankr. Ct.'s Order Den. Debtor's Mot. Recons. 2 n.2, R. Vol. I Ex. 2.)  Abstract filed its answer to the complaint on February 4, 2009.  (Mot. Summ. J. Hr'g Tr. 8:3–4.)  Hyman then voluntarily dismissed the Underlying Lawsuit on February 10, 2009.  (<u>Id.</u> at 8:4–5.)

On June 2, 2010, the Third Circuit, sitting en banc, announced a new test for when a claim arises under the Bankruptcy Code.  <u>See</u> <u>In re Grossman's Inc.</u>, 607 F.3d 114 (3d Cir. 2010) (en banc).  The Third Circuit did not make clear whether this new test (the "<u>Grossman's</u> test") would apply retroactively to discharge orders entered prior to June 2010.

On March 21, 2011, Defendant Edwin P. Smith, Esquire, filed a lawsuit on behalf of Abstract against Hyman alleging that Hyman prosecuted the Underlying Lawsuit for improper purposes.  (Mot. Summ. J. Hr'g Tr. 8:5–6; Bankr. Ct.'s Order Reopening Case 4, R. Vol. I Ex. 10.)  Smith filed this new lawsuit (the "Abuse Action") pursuant to the Pennsylvania statutory cause of action for the wrongful use of civil proceedings, 42 Pa. Cons. Stat. § 8351.[3]  The

_____

[3] This statute defines the elements of a claim for wrongful use of civil proceedings as follows:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper

(footnote continued)

amended complaint in the Abuse Action alleges that Hyman and his counsel "lacked probable cause to institute and continue the action against [Abstract]" because their "sole purpose in instituting and continuing the [Underlying Lawsuit] against [Abstract] was to attempt to extract an unwarranted settlement from [Abstract] or its insurer." (Abuse Action Am. Compl. ¶¶ 7, 9, Bankr. Case No. 11-852, Doc. No. 1-4.)[4]

On April 5, 2011, Hyman filed a motion to reopen his bankruptcy proceedings so that he could "file an adversary proceeding[] seeking [the Bankruptcy] Court's citation of [civil] contempt and for sanctions against [Abstract and Smith]." (Mot. Re-Open Bankr. Proceeding ¶ 7, R. Vol. I Ex. 6.) Hyman argued that civil contempt sanctions were warranted because Abstract and Smith (collectively, "Defendants") had violated the Discharge Order by attempting to hold Hyman liable for initiating the Underlying Lawsuit. Hyman explained that the Discharge Order prohibited Defendants from attempting to collect on this debt because Hyman had initiated the Underlying Lawsuit before filing for bankruptcy. (Id. at ¶ 2.) Defendants argued in opposition that they did not violate the Discharge Order because they did not hold a claim against Hyman when Hyman filed for bankruptcy protection. (Defs.' Mem. Opp. Mot. Re-Open Bankr. Proceedings 6, R. Vol. I Ex. 8.)

The Bankruptcy Court reopened the proceedings on November 17, 2011. (Bankr. Ct.'s Order Reopening Case 7.) The Court explained in its order reopening the case that it was doing

---

discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. § 8351(a).

[4] The original complaint alleges that Hyman and his counsel "actually knew that the only purpose in instituting [the Underlying Lawsuit] against [Abstract] was because there was insurance coverage available." (Abuse Action Compl. ¶ 6, R. Vol. I Ex. 6, at Ex. C.)

so because, under the <u>Grossman's</u> test, Defendants "had a pre-petition claim in Hyman's Chapter 7 Case." (<u>Id.</u>) The Bankruptcy Court relied on <u>Wright v. Owens Corning</u>, 450 B.R. 541 (W.D. Pa. 2011), <u>aff'd in part, rev'd in part</u>, 679 F.3d 101 (3d Cir. 2012), for the proposition that, "[a]lthough the Third Circuit's decision in <u>Grossman's</u> was not issued until June 2, 2010 and [Hyman]'s Chapter 7 case was closed on December 5, 2008, the test which the Third Circuit adopted in <u>Grossman's</u> for determining when a claim arises applies retroactively" to the claims asserted by Defendants in the Abuse Action. (Bankr. Ct.'s Order Reopening Case 7 n.6.)

On May 18, 2012, the Third Circuit reversed the Western District of Pennsylvania's holding in <u>Wright</u>. <u>See</u> <u>Wright v. Owens Corning</u>, 679 F.3d 101, 109 (3d Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 1239 (2013). There is no indication in the record that either party brought this fact to the Bankruptcy Court's attention.

A few weeks later, in July 2012, Hyman and Defendants both moved for summary judgment on the question of whether Defendants violated the Discharge Order by pursuing the Abuse Action. (Hyman's Mot. Summ. J., R. Vol. I Ex. 14; Defs.' Mot. Summ. J., R. Vol. I Ex. 15.) On September 26, 2012, the Bankruptcy Court granted Hyman's motion and denied Defendants' motion. (Bankr. Ct.'s Order Granting Pl.'s Mot. Summ. J. & Denying Defs.' Mot. Summ. J., R. Vol. II Ex. 17.) The Bankruptcy Court explained that Hyman was entitled to summary judgment on his civil contempt claim because Defendants "violate[d] the discharge injunction" when they "commenced an action post-petition to collect a debt" arising from a "pre-petition claim." (Mot. Summ. J. Hr'g Tr. 14:9–14.) The Bankruptcy Court then held a series of hearings on damages that culminated in an award of $5,972.70 for Hyman. (Bankr. Ct.'s Order

Awarding Sanctions, R. Vol. I Ex. 4;[5] Bankr. Ct.'s Order Den. Debtor's Mot. Recons., R. Vol. I Ex. 2.)  This award compensated Hyman for his damages and his attorneys' costs; the Bankruptcy Court awarded no attorneys' fees.

 Hyman and Defendants both appealed to this Court.  Hyman alleges that the "Bankruptcy Court err[ed] in refusing to award reasonable attorney's fees to [Hyman] for [Hyman]'s counsel."  (Hyman's Br. 7, Case No. 13-4178, Doc. No. 4.)  Defendants argue, among other things, that "the Bankruptcy Court erred when it granted summary judgment in favor of debtor and denied summary judgment in favor of defendants" because "[t]he bankruptcy court's determination that [Defendants'] wrongful use of civil proceedings claim against Hyman arose pre-petition is . . . fundamentally unfair and denies Abstract due process."  (Defs.' Br. 1, 18, Case No. 13-4309, Doc. No. 4.)

By Order dated October 31, 2013, this Court directed both parties to file a supplemental brief addressing the Third Circuit's ruling in Wright v. Owens Corning.  (Order, Oct. 31, 2013, Case No. 13-4178, Doc. No. 6; Order, Oct. 31, 2013, Case No. 13-4309, Doc. No. 8.)  The parties have submitted these briefs, and this appeal and cross-appeal are now ripe for review.

## II.   STANDARD OF REVIEW

A district court exercising appellate review over a bankruptcy court's order reviews the "bankruptcy court's legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof."  In re Miller, 730 F.3d 198, 203 (3d Cir. 2013) (internal quotation marks omitted).  Accordingly, this Court reviews a bankruptcy court's order granting or denying summary judgment de novo, see In re Harvard Indus., Inc., 568 F.3d 444,

---

[5] This citation refers to the record on appeal in Case Number 13-4309.

450 (3d Cir. 2009), and its order imposing or declining to impose sanctions for abuse of discretion, see In re Miller, 730 F.3d at 203.

We "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.

## III.   DISCUSSION

Bankruptcy courts properly enforce compliance with their discharge orders through the imposition of civil contempt sanctions.  See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); see also In re Joubert, 411 F.3d 452, 455 (3d Cir. 2005) (holding that the appellant's "lone remedy is a contempt proceeding pursuant to § 105(a) in bankruptcy court").

Civil contempt sanctions are appropriate where the plaintiff proves "three elements by clear and convincing evidence":  "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." Marshak v. Treadwell, 595 F.3d 478, 485 (3d Cir. 2009) (internal quotation marks omitted). Compliance with an order is evaluated objectively.  Hence, "willfulness is not a necessary element of civil contempt."  Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148 (3d Cir. 1994); Am. Bd. of Surgery, Inc. v. Lasko, 532 F. App'x 66, 70 (3d Cir. 2013) (per curiam) ("Good faith is not a defense to civil contempt." (internal quotation marks omitted)).  As the Supreme Court has noted, "it matters not with what intent the defendant did the prohibited act" because the purpose of civil contempt sanctions is "to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance."  McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949).

In order to determine whether Defendants' prosecution of the Abuse Action violated the Discharge Order, this Court must determine the scope of that order.  Any ambiguities in the Discharge Order "must be resolved in favor of the party charged with contempt."  John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003); see also Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994) (noting that "[c]ontemnors . . . are sometimes excused when they violate vague court orders" because "ambiguities and omissions in orders redound to the benefit of the person charged with the contempt" (internal quotation marks omitted)).  "A contempt citation should not be granted if there is ground to doubt the wrongfulness of the defendant's conduct."  Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995) (internal quotation marks omitted); see also S. New Eng. Tel. Co. v. Global NAPS Inc., 624 F.3d 123, 145 (2d Cir. 2010) (noting that a court may "hold a party in contempt for violation of a court order when the order violated by the contemnor is clear and unambiguous" (internal quotation marks omitted)); In re Fannie Mae Sec. Litig., 552 F.3d 814, 821 (D.C. Cir. 2009) (noting that "contempt is appropriate only for violation of a clear and unambiguous order" (internal quotation marks omitted)).

The Discharge Order states:  "The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code)."  (Discharge of Debtor 1.)  Subject to exceptions not relevant here, the Bankruptcy Code provides that a discharge in a Chapter 7 bankruptcy proceeding "discharges the debtor from all debts that arose before the date of the order for relief under [Chapter 7]."  11 U.S.C. § 727(b).  The Bankruptcy Code defines the "term 'debt'" as "liability on a claim."  Id. § 101(12).  A claim, in turn, is defined in relevant part as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Id. § 101(5)(A).  Combining these definitions, the Discharge Order discharged Hyman from all liability on rights to payment that arose before Hyman filed his bankruptcy petition.  The Bankruptcy Code does not define when a right to payment arises; interpretation of that ambiguity is left to the courts.

Prior to June 2010, the Third Circuit held that "a 'claim' arises for bankruptcy purposes at the same time the underlying state law cause of action accrues."  Jones v. Chemetron Corp., 212 F.3d 199, 206 (3d Cir. 2000).  This test is known as the Frenville test because it was first announced in the Third Circuit's opinion in Matter of M. Frenville Co., 744 F.2d 332, 337 (3d Cir. 1984), overruled by In re Grossman's Inc., 607 F.3d 114 (3d Cir. 2010) (en banc).

Under the Frenville test, Abstract did not hold a claim under the Bankruptcy Code against Hyman when Hyman filed for bankruptcy on December 2, 2008; Abstract first held such a claim on February 10, 2009, when Hyman dismissed the Underlying Lawsuit and Abstract's state-law cause of action accrued.  See 42 Pa. Cons. Stat. § 8351(a)(2); Ludmer v. Nernberg, 553 A.2d 924, 926 (Pa. 1989) ("Although the initiation of a lawsuit is one element of the [wrongful use of civil proceedings] cause of action, the cause of action does not accrue until all the requirements have been met which includes obtaining a favorable outcome."); Mot. Summ. J. Hr'g Tr. 8:4–5 (noting that the Underlying Lawsuit was dismissed on February 10, 2009).  Thus, if the Frenville test applies to Abstract's claim, Defendants did not violate the Discharge Order by filing the Abuse Action.

In June 2010, the Third Circuit, sitting en banc, overruled the Frenville test.  In re Grossman's Inc., 607 F.3d at 121 ("[T]he Frenville accrual test should be and now is overruled.")  The Court of Appeals explained that it was "persuaded that the widespread criticism of Frenville's accrual test is justified" because that test "imposes too narrow an

interpretation of a 'claim' under the Bankruptcy Code." Id.; see also id. ("The accrual test in Frenville does not account for the fact that a 'claim' can exist under the Code before a right to payment exists under state law."). The Third Circuit announced the new Grossman's test, under which a claim arises under the Bankruptcy Code "when an individual is exposed pre-petition to . . . conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." Id. at 125. A panel of the Third Circuit subsequently "extend[ed] the Grossman's test to include post-petition, pre-confirmation exposure to a debtor's conduct." Wright v. Owens Corning, 679 F.3d 101, 109 (3d Cir. 2012), cert. denied, 133 S. Ct. 1239 (2013).

Under the Grossman's test, Defendants arguably violated the Discharge Order because Abstract was first exposed to Hyman's allegedly improper use of civil proceedings when Hyman filed the writ of summons in the Underlying Lawsuit. Thus, which of these two tests – Frenville or Grossman's – applies to the claim asserted by Defendants in their Abuse Action is critically important. As previously discussed, the Bankruptcy Court held that the Grossman's test applied to this claim. (See Bankr. Ct.'s Order Reopening Case 7 n.6.)

The Grossman's Court did not decide whether the Grossman's test should apply retroactively. The Court did, however, caution that "[a]ny application of the test to be applied cannot be divorced from fundamental principles of due process." In re Grossman's Inc., 607 F.3d at 125. A panel of the Third Circuit subsequently addressed the retroactivity of the Grossman's test in Wright v. Owens Corning.

Wright resolved an appeal by two plaintiffs, Wright and West, who had purchased faulty roof tiles from manufacturer Owens Corning. 679 F.3d at 102–03. The relevant facts of that appeal begin in "late 1998 or early 1999," when Wright purchased tiles from Owens Corning. Id. at 103. Roughly 18 months later, in October 2000, Owens Corning filed a Chapter 11

bankruptcy petition.  Id.  The company's reorganization plan provided for the discharge of all claims that arose before the plan's confirmation date.  Id.  The bankruptcy court then set a claims bar date of April 15, 2002.  Id.  Notice of this bar date was published in several national newspapers.  Id.  Wright did not file proof of claim before 2002 because, at that point, the roof tiles she purchased from Owens Corning were functioning normally.  Id.  In 2005, West also purchased roof tiles from Owens Corning.  Id.  In 2006, the bankruptcy court confirmed Owens Corning's plan of reorganization.  Id.  Three years later, in 2009, Wright and West discovered that the tiles they had purchased from Owens Corning were defective.  Id.  The two consumers submitted warranty claims to Owens Corning, which rejected Wright's claim in part and West's claim in full.  Id.  Wright and West then filed suit against Owens Corning, alleging, among other things, breach of warranty.  Id.  While this lawsuit was pending, the Third Circuit announced its opinion in Grossman's.  Id. at 104.  Owens Corning subsequently filed a motion for summary judgment.  Id.

In order to resolve Owens Corning's motion for summary judgment, the district court had to decide whether to apply the Frenville or Grossman's test to Wright and West's claims.  Under the Frenville test, the consumers first had claims under the Bankruptcy Code when their state-law claims against Owens Corning accrued.  Under Pennsylvania law, a cause of action for breach of contract "accrues when the breach occurs, . . . *except that* where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  13 Pa. Cons. Stat. § 2725(b) (emphasis added).  Assuming that this exception applies to the tiles Wright and West purchased, they first held claims under the Bankruptcy Code in 2009 when they discovered that the tiles were defective.  Cf. Wright, 679 F.3d at 108 (noting

that, "under the <u>Frenville</u> test [Wright and West] did not hold 'claims' under the Bankruptcy

Code" when the bankruptcy court discharged Owens Corning's debts).  By contrast, under the

<u>Grossman's</u> test, both Wright and West held pre-confirmation claims because the conduct giving

rise to their injury – their purchase of roofing tiles – occurred before the bankruptcy court

confirmed the plan of reorganization.  The district court applied <u>Grossman's</u> retroactively to

Wright and West's claim, and granted Owens Corning's motion for summary judgment.  <u>See</u>

<u>Wright v. Owens Corning</u>, 450 B.R. 541, 554 (W.D. Pa. 2011), <u>aff'd in part, rev'd in part</u>, 679

F.3d 101 (3d Cir. 2012).

On appeal, the Third Circuit reversed, holding that Wright and West's claims were not

discharged by Owens Corning's bankruptcy.  The Court of Appeals explained that, because

<u>Frenville</u> was law in the Third Circuit when Wright and West received notice of Owens

Corning's reorganization, these consumers "could only understand that their rights would not be

affected in any way by the referenced proceedings."  <u>Wright</u>, 679 F.3d at 108.  "Not until [the

Third Circuit] overturned <u>Frenville</u> and established [the] new test for determining when a claim

exists under the Code did [Wright and West] unexpectedly hold 'claims' that arguably could be

discharged in the proceedings addressed in the notices."  <u>Id.</u>  The Court of Appeals concluded

that "the District Court correctly determined that [Wright and West] held 'claims' under the

Bankruptcy Code," but erred by holding that "those claims were discharged . . . in the

circumstances [of their case]."  <u>Id.</u> at 109.  Wright and West's claims were not discharged

because "due process calls for the outcome of the <u>Frenville</u> test to apply for bankruptcy cases in

which reorganization plans are proposed and confirmed prior to June 2, 2010, when Grossman's

was decided."  <u>Id.</u>

Because of the potential importance of the Third Circuit's holding in <u>Wright</u> to the present appeals, and because neither party cited that case in their briefs, this Court ordered both parties to submit supplemental briefs discussing what effect, if any, <u>Wright</u> has upon these appeals.

In their supplemental brief, Defendants argue that <u>Wright</u> controls the outcome of this case.  Specifically, Defendants argue that "notice to Abstract of the bankruptcy was with the understanding that it did not hold a claim" because, at the time, "<u>Frenville</u> controlled the status of Abstract's 'claim.'"  (Defs.' Supp. Br. 6, Case No. 13-4309, Doc. No. 9.)  Defendants conclude that, "[p]ursuant to <u>Wright</u>, Abstract was not afforded due process and, accordingly, its claim was not discharged by the discharge order."  (<u>Id.</u>)

In his brief, Hyman argues that <u>Wright</u> is inapplicable to the present appeals because the Third Circuit's holding in that case does not apply to no-asset Chapter 7 cases.  (Hyman's Supp. Br. 6–9, Case No. 13-4178, Doc. No. 8.)  Hyman's strongest argument[6] highlights the fact that no notice is required in a no-asset Chapter 7 case for a debt to be discharged.  <u>See</u> <u>Judd v. Wolfe</u>, 78 F.3d 110, 115 (3d Cir. 1996) (holding that, "in a no-asset Chapter 7 case where no bar date has been set," a creditor who received *no* notice of the bankruptcy "has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim" because the creditor "would not have received anything even if he had been [notified]").  In such cases,

---

[6] Hyman also argues that the <u>Wright</u> Court explicitly limited its holding to Chapter 11 cases.  This argument is based a misquotation of the <u>Wright</u> opinion.  <u>Compare</u> Hyman's Supp. Br. 7–8 ("'This appeal concerns . . . when a 'claim' exists under the Bankruptcy Code, *11 U.S.C. §§ 1101, et seq.*'" (emphasis added) (quoting <u>Wright</u>, 679 F.3d at 102)), <u>with</u> <u>Wright</u>, 679 F.3d at 102 ("This appeal concerns . . . when a 'claim' exists under the Bankruptcy Code, *11 U.S.C. § 101 et seq.*" (emphasis added)).

"the debt in question was either discharged or excepted from discharge based on [11 U.S.C. §§] 523 and 727(b)."  Id. at 111.

The threshold issue in these appeals is whether Abstract's claim against Hyman was discharged by the Discharge Order.  Resolution of this question turns on whether Abstract was afforded due process.  Cf. Wright, 679 F.3d at 107 ("Inadequate notice . . . precludes discharge of a claim in bankruptcy." (internal quotation marks omitted)); In re Grossman's Inc., 607 F.3d at 125 ("Any application of the test to be applied cannot be divorced from fundamental principles of due process.").  The Bankruptcy Court did discuss whether Abstract was afforded due process, presumably because it relied on the now-reversed holding of the Western District of Pennsylvania in Wright, 450 B.R. 541.  In its order reopening Hyman's bankruptcy case, the Bankruptcy Court held that the "test which the Third Circuit adopted in Grossman's for determining when a claim arises applies retroactively."  (Bankr. Ct.'s Order Reopening Case 7 n.6.)  The Bankruptcy Court then relied on this holding when deciding whether Hyman was entitled to summary judgment.  (Mot. Summ. J. Hr'g Tr. 13:24–14:8.)[7]

Upon review of the parties' briefs and the record on appeal, we conclude that this matter should be remanded to the Bankruptcy Court for consideration of two questions.  First, the Bankruptcy Court shall address whether entry of summary judgment in favor of Hyman and

_____

[7] The Bankruptcy Court did not consider Defendants' argument at the summary judgment stage that their Abuse Action claim "may be distinguished from the Grossman case," because the Court held that retroactive application of the Grossman's test was "clearly the law of the case." (Mot. Summ. J. Hr'g Tr. 13:25, 14:3.)  We note that the law of the case doctrine "directs a court's discretion," but "does not limit the tribunal's power."  Pepper v. United States, 131 S. Ct. 1229, 1250 (2011) (internal quotation marks omitted).  This doctrine does not prevent reconsideration of a court's ruling where "a supervening new law has been announced" or "the earlier decision was clearly erroneous and would create manifest injustice."  Schneyder v. Smith, 653 F.3d 313, 331–32 (3d Cir. 2011) (internal quotation marks omitted).

against Defendants is consistent with due process.  Cf. Wright, 679 F.3d at 108 ("[W]hether adequate notice has been provided depends on the circumstances of a particular case."); In re Grossman's Inc., 607 F.3d at 127 ("Whether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court.").  Second, if Abstract's claim was discharged by the Discharge Order, the Bankruptcy Court shall consider whether the Discharge Order unambiguously applied to the claim asserted by Defendants in the Abuse Action.  In re Miller, 730 F.3d 198, 203 (3d Cir. 2013) ("Absent record support for imposing sanctions, remand to the bankruptcy court is appropriate.").  This Court expresses no opinion on the proper resolution of these two questions; we find that both questions are best suited to resolution by the Bankruptcy Court.

## IV.   CONCLUSION

For the foregoing reasons, we remand this matter to the Bankruptcy Court for further proceedings consistent with this opinion.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

15